## UNITED STATES COURT OF INTERNATIONAL TRADE

| | | |
|---|---|---|
| XIAMEN DALLE NEW ENERGY AUTOMOBILE CO., LTD., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Court No. 25-00205 |
| | : | Before Hon. Jane A. Restani, |
| | : | Judge |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Defendant, | : | |
| | : | |
| | : | |
| | : | |
| AMERICAN PERSONAL TRANSPORTATION VEHICLE MANUFACTURERS COALITION, | : | |
| | : | |
| Defendant-Intervenor. | : | |

---

**<u>PLAINTIFF XIAMEN DALLE NEW ENERGY AUTOMOBILE CO., LTD.'S RULE 56.2<br>MOTION FOR JUDGMENT ON THE AGENCY RECORD<br>AND MEMORANDUM IN SUPPORT THEREOF</u>**

<div align="center">

Jing Zhang<br>
Ryan R. Migeed<br>
MAYER BROWN LLP<br>
1999 K Street NW<br>
Washington, DC 20006<br>
(202) 263-3235<br>
*Counsel to Xiamen Dalle New Energy*<br>
*Automobile Co., Ltd.*

</div>

March 30, 2026

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| XIAMEN DALLE NEW ENERGY AUTOMOBILE CO., LTD., | : |
| Plaintiff, | : |
| v. | : Court No. 25-00205<br>: Before Hon. Jane A. Restani, Judge |
| UNITED STATES OF AMERICA, | : |
| Defendant, | : |
| AMERICAN PERSONAL TRANSPORTATION VEHICLE MANUFACTURERS COALITION, | : |
| Defendant-Intervenor. | : |

**PLAINTIFF XIAMEN DALLE NEW ENERGY AUTOMOBILE CO., LTD.'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Rules of the Court of International Trade (the "Court"), Xiamen Dalle New Energy Automobile Co., Ltd. ("Plaintiff" or "Xiamen Dalle"), hereby moves for judgment on the agency record with respect to the issues raised in Xiamen Dalle's Complaint filed with the Court on October 14, 2025, ECF No. 10.

Plaintiff Xiamen Dalle challenges the U.S. Department of Commerce's ("Commerce") final determination in the countervailing investigation covering *Certain Low-Speed Personal Transportation Vehicles from the People's Republic of China*, published in the *Federal Register* on June 23, 2025. *Final Affirmative Countervailing Duty Determination and Final Affirmative Determination of Critical Circumstances,* 90 Fed. Reg. 26536 (Dep't Commerce June 23, 2025) ("*Final Determination*"). As demonstrated in Plaintiff's memorandum of law in support of this

motion, Commerce's *Final Determination* is not supported by substantial evidence and is otherwise not in accordance with law. Plaintiff, therefore, respectfully requests that this Court grant judgment in its favor and remand the *Final Determination* to Commerce for reconsideration consistent with the opinion of this Court.

<div style="margin-left: 45%;">

Respectfully submitted,

/s/ Jing Zhang
Jing Zhang
Ryan R. Migeed
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3235
*Counsel to Xiamen Dalle New Energy Automobile
Co., Ltd.*

</div>

2

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| XIAMEN DALLE NEW ENERGY AUTOMOBILE CO., LTD.,   :<br>  :<br>  :<br>Plaintiff,   :<br>  :<br>v.   :<br>  :<br>  :<br>  :<br>UNITED STATES OF AMERICA,   :<br>  :<br>Defendant,   :<br>  :<br>  :<br>  :<br>  :<br>AMERICAN PERSONAL TRANSPORTATION VEHICLE MANUFACTURERS COALITION,   :<br>  :<br>Defendant-Intervenor.   : | Court No. 25-00205<br>Before Hon. Jane A. Restani, Judge |

**PROPOSED ORDER**

Upon consideration of Plaintiff Xiamen Dalle's Rule 56.2 Motion for Judgment on the Agency Record, the Court having reviewed the responses thereto, and all other pertinent pleadings and papers, it is hereby:

**ORDERED** that Plaintiff's Rule 56.2 Motion is hereby granted; and it is further

**ORDERED** that the *Final Determination* issued by the U.S. Department of Commerce ("Commerce") in the countervailing duty investigation covering *Certain Low-Speed Personal Transportation Vehicles from the People's Republic of China* in *Final Affirmative Countervailing Duty Determination and Final Affirmative Determination of Critical Circumstances*, 90 Fed. Reg. 26,536 (Dep't Commerce June 23, 2025) ("*Final Determination*")

is not supported by substantial evidence and is otherwise not in accordance with law; and it is further

ORDERED that the *Final Determination* is remanded to Commerce for further consideration consistent with this opinion.

**SO ORDERED**.

Dated:_____, 2026
          New York, New York                          _____
                                                             Jane A. Restani, Judge

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | | |
|---|---|---|
| XIAMEN DALLE NEW ENERGY AUTOMOBILE CO., LTD., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Court No. 25-00205 |
| | : | Before Hon. Jane A. Restani, Judge |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Defendant, | : | |
| | : | |
| | : | |
| AMERICAN PERSONAL TRANSPORTATION VEHICLE MANUFACTURERS COALITION, | : | |
| | : | |
| Defendant-Intervenor. | : | |

## <u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF XIAMEN DALLE'S MOTION FOR JUDGMENT ON THE AGENCY RECORD</u>

Jing Zhang
Ryan R. Migeed
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3235
*Counsel to Xiamen Dalle New Energy Automobile Co., Ltd.*

March 30, 2026

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

I.     STATEMENT PURSUANT TO RULE 56.2 & SUMMARY OF ARGUMENT ................................................................................................................. 1

     A.     **Administrative Determination Under Review** ....................................... 1

     B.     **Issues of Law Presented and Summary of Argument** ........................ 1

          1.     *Whether Commerce's Affirmative Critical Circumstances Determination With Regard to Xiamen Dalle Was Unlawful and Unsupported by Substantial Evidence on the Record, Warranting Remand to Reopen the Record* ..................................... 1

          2.     *Whether Commerce's Final Determination Must Be Remanded for Commerce to Reopen the Record and Accept Xiamen Dalle's December 2024 Q&V Shipment Data in Light of Newly Discovered Evidence That Calls the Integrity of Commerce's CVD Investigation Into Question* ....................................... 2

II.     STATEMENT OF FACTS ....................................................................... 3

III.     STANDARD OF REVIEW ...................................................................... 11

IV.     ARGUMENT .............................................................................................. 13

     A.     **Commerce's Affirmative Critical Circumstances Determination Was Unlawful and Unsupported by Substantial Evidence, Warranting Remand to Reopen the Record** ................................................................. 13

          1.     *Xiamen Dalle Did Not Withhold Necessary Information Requested by Commerce, Making Commerce's Use of Facts Available with an Adverse Inference Baseless and Unlawful* ................................................................................. 14

          2.     *Commerce Failed in Its Statutory Obligation to Notify Xiamen Dalle of Deficiencies in Its Response and Provide an Opportunity to Cure, Precluding Commerce from Use of "Facts Otherwise Available."* ....................................... 21

          3.     *Commerce's Decision to Apply AFA to Xiamen Dalle Was Unsupported by Substantial Evidence and Was an Abuse of Discretion.* ....................................... 24

     B.     **Prior Counsel's Conduct Impugns the Integrity of the Agency Proceeding and Warrants a Remand to Reopen the Record** .................................................. 31

V.     CONCLUSION AND RELIEF SOUGHT ................................................. 35

## TABLE OF AUTHORITIES

**Cases**

*Archer Daniels Midland Co. v. United States*, 917 F. Supp. 2d 1331 (Ct. Int'l Trade 2013) ...... 30

*Artisan Mfg. Corp. v. United States*, 978 F. Supp. 2d 1334 (Ct. Int'l Trade 2014)................ 27, 29

*Baldayaque v. United States*, 338 F.3d 145 (2d Cir. 2003) ........................................ 16, 17, 18, 20

*Baroque Timber Indus. (Zhongshan) Co. v. United States*, 766 F. Supp. 3d 1296 (Ct. Int'l Trade 2025)..................................................................................................................... 22

*Bio-Lab, Inc. v. United States*, 435 F. Supp. 3d 1361 (Ct. Int'l Trade 2020) ..................... 24, 25, 30

*Brennan v. Dep't of Health & Hum. Servs.*, 787 F.2d 1559 (Fed. Cir. 1986) ............................ 12

*Celik Halat ve Tel Sanayi A.S. v. United States*, 557 F. Supp. 3d 1363 (Ct. Int'l Trade 2022)... 12, 24, 29

*Chr. Bjelland Seafoods A/S v. United States*, 19 C.I.T. 35 (1995) ......................................... 12, 24

*Cmty. Dental Servs. v. Tani*, 282 F.3d 1164 (9th Cir. 2002) ................................................. passim

*Consol. Bearings. Co. v. United States*, 412 F.3d 1266 (Fed. Cir. 2005).................................... 12

*Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938) ....................................................................... 11

*DiMasi v. Sec'y of Health & Hum. Servs.,* No. 2022-1854, 2023 WL 4697122 (Fed. Cir. July 24, 2023)................................................................................................................ 16, 18, 20

*DuPont Teijin Films USA v. United States*, 407 F.3d 1211 (Fed. Cir. 2005) .............................. 11

*Eregli Demir v. Celik Fabrikalari T.A.S*, 308 F. Supp. 3d 1297 (Ct. Int'l Trade 2018)............... 22

*F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027 (Fed. Cir. 2000) .................................................................................................................................. 30

*Grobest & I-Mei Indus. (Vietnam) v. United States*, 815 F. Supp. 2d 1342 (Ct. Int'l Trade 2012) .................................................................................................................... 25, 26, 27, 28

*Grobest & I-Mei Indus. (Vietnam) Co. v. United States*, 853 F. Supp. 2d 1352 (Ct. Int'l Trade 2012)................................................................................................................................. 12

*Hitachi Energy USA Inc. v. United States*, 34 F.4th 1375 (Fed. Cir. 2022) .......................... 22, 23

*Home Prods. Int'l v. United States*, 633 F.3d 1369 (Fed. Cir. 2011) .................................... 31, 32

# TABLE OF AUTHORITIES (Cont.)

*In re Bonnanzio,* 91 F.3d 296 (2d Cir. 1996).................................................................. 16

*Jackson v. Washington Monthly Co.*, 569 F.2d 119 (D.C. Cir. 1977) ........................................... 17

*Jindal Poly Films Ltd. v. United States*, 794 F. Supp. 3d 1384 (Ct. Int'l Trade 2025) .... 12, 25, 26

*Laerdal Med. Corp. v. Int'l Trade Comm'n*, 910 F.3d 1207 (Fed. Cir. 2018)......................... 22, 25

*Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927 (Fed. Cir. 1984).............................. 11

*NTN Bearing Corp. v. United States*, 74 F.3d 1204 (Fed. Cir. 1995)................................ 12, 25, 28

*Primbs v. United States*, 4 Cl. Ct. 366 (1984).......................................................................... 16, 17

*Pro-Team Coil Nail Enterprise, Inc. v. United States*, 419 F. Supp. 3d 1319 (Ct. Int'l Trade 2019) ...................................................................................................................................... 12

*Rhone Poulenc, Inc. v. United States*, 880 F.2d 401 (Fed. Cir. 1989)......................................... 34

*SKF USA Inc. v. United States*, 675 F. Supp. 2d 1264 (Ct. Int'l Trade 2009)......................... 30, 33

*Tai-Ao Aluminium (Taishan) Co. v. United States*, 983 F.3d 487 (Fed. Cir. 2020) ..................... 33

*Target Corp. v. United States*, 609 F.3d 1352 (Fed. Cir. 2010) .................................................. 12

*Tianjin Magnesium Int'l Co., Ltd. v. United States*, 836 F. Supp. 2d 1377 (Ct. Int'l Trade 2012) ...................................................................................................................................... 32

*USX Corp. v. United States*, 655 F. Supp. 487 (Ct. Int'l Trade 1987)......................................... 12

*Virgin Islands Port Auth. v. United States*, 922 F.3d 1328 (Fed. Cir. 2019)............................... 16

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i)........................................................................................................ 11

28 U.S.C. § 1585.......................................................................................................................... 34

19 U.S.C. § 1671b(e)(1)............................................................................................................ 4, 26

19 U.S.C. § 1671d(a)(2)............................................................................................................ 4, 26

19 U.S.C. § 1677e(a)...................................................................................................... 14, 15, 21, 22

## TABLE OF AUTHORITIES (Cont.)

19 U.S.C. § 1677e(a)(2)(D) .................................................................................................... 22

19 U.S.C. § 1677e(b) .............................................................................................................. 30

19 U.S.C. § 1677e(b)(1)................................................................................................. 14, 24, 30

19 U.S.C. § 1677e(b)(1)(A) .................................................................................................... 25

19 U.S.C. § 1677m(d) .................................................................................................. 21, 22, 23, 24

**Administrative Decisions and Other Materials**

*Certain Low Speed Personal Transportation Vehicles From the People's Republic of China: Final Determination of Sales at Less-Than-Fair-Value and Final Affirmative Determination of Critical Circumstances, in Part*, 90 Fed. Reg. 26530, 26531 (Dep't Commerce June 23, 2025) ............................................................................................................. 10, 26, 27, 34

*Certain Low Speed Personal Transportation Vehicles From the People's Republic of China: Preliminary Affirmative Countervailing Duty Determination, Preliminary Affirmative Determination of Critical Circumstances, in Part, and Alignment of Final Determination With Final Antidumping Duty Determination*, 89 Fed. Reg. 96942 (Dep't Commerce Dec. 6, 2024) . ................................................................................................................................................. 6

*Certain Low-Speed Personal Transportation Vehicles From the People's Republic of China: Amended Final Antidumping Duty Determination and Antidumping Duty Order; Amended Final Determination of Countervailing Duty Investigation and Countervailing Duty Order*, 90 Fed. Reg. 38759 (Dep't Commerce Aug. 12, 2025) ....................................................... 11

*Certain Low-Speed Transportation Vehicles from the People's Republic of China: Initiation of Countervailing Duty Investigation*, 89 Fed. Reg. 57870 (Dep't Commerce July 16 2024)........ 3

*Final Affirmative Countervailing Duty Determination and Final Affirmative Determination of Critical Circumstances*, 90 Fed. Reg. 26536 (Dep't Commerce June 23, 2025).............. 1, 5, 10

Restatement (Third) of Agency §§ 5.03, 5.04 (2006)............................................................. 16, 20

Restatement (Third) Law Governing Lawyers § 16 (2000).......................................................... 18

**Regulations**

19 C.F.R.§ 351.206(i) ............................................................................................................... 4

19 C.F.R. § 351.206(h)(2)........................................................................................................... 4

**INTRODUCTION**

Plaintiff Xiamen Dalle New Energy Automobile Co., Ltd.'s ("Plaintiff" or "Xiamen Dalle"), a foreign producer and exporter of the subject merchandise individually examined in the underlying countervailing duty ("CVD") investigation conducted by the U.S. Department of Commerce ("Commerce") in *Certain Low-Speed Personal Transportation Vehicles from the People's Republic of China*, hereby submits this Brief in Support of its Motion for Judgment on the Agency Record in accordance with Rule 56.2 of the Rules of the United States Court of International Trade ("CIT R."), and the Court's February 24, 2026 Order, ECF No. 31. For the reasons set forth below, Plaintiff respectfully requests that the Court grant its Motion for Judgment on the Agency Record and remand Commerce's *Final Determination* in the below-referenced investigation to the agency for action consistent with this brief.

I.     **STATEMENT PURSUANT TO RULE 56.2 & SUMMARY OF ARGUMENT**

A.     **Administrative Determination Under Review**

The administrative determination under review in this action is the *Final Determination* in the CVD investigation of Certain Low-Speed Personal Transportation Vehicles from the People's Republic of China. *Final Affirmative Countervailing Duty Determination and Final Affirmative Determination of Critical Circumstances*, 90 Fed. Reg. 26536 (Dep't Commerce June 23, 2025), P.R. 605 ("*Final Determination*").

B.     **Issues of Law Presented and Summary of Argument**

1.  *Whether Commerce's Affirmative Critical Circumstances Determination With Regard to Xiamen Dalle Was Unlawful and Unsupported by Substantial Evidence on the Record, Warranting Remand to Reopen the Record*

Yes. Commerce's affirmative critical circumstances determination was based on a finding that Xiamen Dalle withheld necessary information from Commerce by failing to place the December 2024 quantity and value ("Q&V") shipment data onto the record, warranting

1

Commerce's use of an adverse inference. However, Xiamen Dalle cannot be found to have withheld information from Commerce, as the conduct identified by Commerce is attributable only to Xiamen Dalle's prior counsel based on its significant and unusual breaches of attorney fiduciary duties, including through misleading representations, "vitiating" the agency relationship between the parties.

Moreover, Commerce failed in its affirmative statutory obligation to notify Xiamen Dalle of a deficiency in its monthly Q&V shipment data questionnaire response (*i.e.*, the missing December 2024 Q&V data) and provide Xiamen Dalle with an opportunity to remedy that minor deficiency, precluding Commerce from using "facts otherwise available" (with or without an adverse inference). Finally, Commerce failed to make a "failure to cooperate" finding with respect to Xiamen Dalle and the facts of this case demonstrate that the interests in fairness and accuracy far outweigh the burden upon Commerce and the agency's interest in finality. Commerce's decision to apply an adverse inference, instead of accepting the single month of missing data onto the CVD record, is therefore unsupported by record evidence and an abuse of agency discretion.

2. *Whether Commerce's Final Determination Must Be Remanded for Commerce to Reopen the Record and Accept Xiamen Dalle's December 2024 Q&V Shipment Data in Light of Newly Discovered Evidence That Calls the Integrity of Commerce's CVD Investigation Into Question*

Yes. The Federal Circuit has held that, where new evidence comes to light to make a *prima facie* case that the underlying agency proceeding is tainted by facts which call into question the integrity of the agency's proceedings, this Court must remand for Commerce to reconsider its decision in light of this new evidence. Xiamen Dalle's prior counsel, via persistent acts of concealment and deceit, deprived the respondent of basic notice, an opportunity to defend its interest, and the right to loyal, honest and competent counsel in violation of fairness and due

process principles. Its conduct calls into serious question the integrity of Commerce's CVD

investigation. Moreover, given the well-documented nature of prior counsel's conduct, the

seriousness and materiality of such conduct, the grave consequences it has caused, and

Commerce's minimal interest in finality in this case, the only appropriate remedy here is for the

Court to order a remand to Commerce with instructions to reopen the record and accept Xiamen

Dalle's December 2024 Q&V shipment data.

## II.    STATEMENT OF FACTS

On July 16, 2024, Commerce published notice of the initiation of the CVD investigation

on certain low-speed personal transportation vehicles from China (effective July 10, 2024), in

response to a petition filed by the American Personal Transportation Vehicle Manufacturers

Coalition ("Petitioner") on June 20, 2024. *See Certain Low-Speed Transportation Vehicles from*

*the People's Republic of China: Initiation of Countervailing Duty Investigation*, 89 Fed. Reg.

57870 (Dep't Commerce July 16 2024), P.R. 59. Commerce subsequently selected Xiamen

Dalle and Guangdong Lvtong New Energy Electric Vehicle Technology Co., Ltd. ("Guangdong

Lvtong") as the mandatory respondents in the investigation on September 5, 2024, and issued

the initial CVD questionnaire on the same day. *See* Memorandum from Dan Alexander, Int'l

Trade Compliance Analyst, to Scot Fullerton, Acting Deputy Ass't Sec'y for Antidumping and

Countervailing Duty Operations, re: *Countervailing Duty Investigation of Certain Low Speed*

*Personal Transportation Vehicles from the People's Republic of China: Respondent Selection*

(Sept. 5, 2024), C.R. 54, P.R. 162; Letter from U.S. Dep't of Commerce to Embassy of the

People's Republic of China, re: *Initial Questionnaire* (Sept. 5, 2024), P.R. 163.

On October 22, 2024, Petitioner filed critical circumstances allegations in both the

antidumping duty ("AD") and CVD investigations with respect to imports of low-speed

3

transportation vehicles from China. *See* Letter from Robert E. DeFrancesco, III, Wiley Rein LLP, to the U.S. Dep't of Commerce, re: *Low Speed Personal Transportation Vehicles from the People's Republic of China: Critical Circumstances Allegations* (Oct. 22, 2024), C.R. 165, P.R. 241.

Commerce is directed to make a finding of critical circumstances when "there have been massive imports of the subject merchandise over a relatively short period." *See* Sections 703(e)(1), 705(a)(2) of the Tariff Act of 1930, *as amended* (the "Act"), 19 U.S.C. §§ 1671b(e)(1), 1671d(a)(2). In general, Commerce will not find critical circumstances to exist, pursuant to its regulations, "unless the imports during the 'relatively short period' have increased by at least 15 percent over the imports during an immediately preceding period of comparable duration." 19 C.F.R. § 351.206(h)(2). To determine whether there were massive imports over a "relatively short period," Commerce normally compares the import volumes of the subject merchandise for at least three months immediately preceding the filing of the petition (*i.e.*, the base period) to a comparable period of at least three months following the filing of the petition (*i.e.*, the comparison period). *See id*. § 351.206(i); *see also* Memorandum from Scot Fullerton, Acting Deputy Ass't Sec'y, AD/CVD Operations, to Abdelali Elouaradia, Deputy Ass't Secy, re: *Decision Memorandum for the Preliminary Affirmative Determination of the Countervailing Duty Investigation of Certain Low Speed Personal Transportation Vehicles from the People's Republic of China* (Nov. 25, 2024), P.R. 341 at 6 ("PDM"). When a petition is filed in the second half of the month, Commerce will typically include the month of filing as the last month of the base period. *Id.* at 6, P.R. 341. Importantly, Commerce's standard practice when determining the "massive imports" issue is to include the longest period up to the date of its

4

preliminary determination. *See Final Determination*, P.R. 605, and accompanying Issues & Decision Memorandum (June 16, 2025), P.R. 597 at 31-32 ("Final IDM").

Following the submission of Petitioner's allegation, Commerce issued a request to Xiamen Dalle for monthly Q&V shipment data, requiring Xiamen Dalle to report monthly Q&V data for subject merchandise shipped to the United States beginning with January 2021 through the last day of the month of publication of the preliminary determination of the investigation. *See* Letter from Mark Hoadley, Program Manager, AD/CVD Operations Office VII, to Xiamen Dalle New Energy Automobile Co., Ltd., re: *Countervailing Duty Investigation of Certain Low-Speed Personal Transportation Vehicles from the People's Republic of China: Request for Monthly Quantity and Value Shipment Data* (Oct. 24, 2024), P.R. 264 ("Q&V Questionnaire").

Xiamen Dalle timely filed Q&V shipment data for January 2021 through September 2024 on November 4, 2024, in accordance with Commerce's instructions. *See* Letter from Mark Ludwikowski, Clark Hill PLC, to the U.S. Dep't of Commerce, re: *Submission of Monthly Quantity and Value Data* (Nov. 4, 2024), C.R. 186-187, P.R. 307. Xiamen Dalle also subsequently timely filed Q&V shipment data for the month of October 2024 on November 15, 2024, and for the month of November 2024 on December 16, 2024. *See* Letter from Mark Ludwikowski, Clark Hill PLC, to the U.S. Dep't of Commerce, re: *Submission of Monthly Quantity and Value Data* (Nov. 15, 2024), C.R. 196-197, P.R. 324; Letter from Mark Ludwikowski, Clark Hill PLC, to the U.S. Dep't of Commerce, re: *Submission of Monthly Quantity and Value Data* (Dec. 16, 2024), C.R. 210-211, P.R. 360.

On November 25, 2024, Commerce issued its preliminary determination, making a negative finding of critical circumstances with respect to Xiamen Dalle. *See generally* PDM, P.R. 341. Commerce's preliminary determination was published in the *Federal Register* on

December 6, 2024. *Certain Low Speed Personal Transportation Vehicles From the People's Republic of China: Preliminary Affirmative Countervailing Duty Determination, Preliminary Affirmative Determination of Critical Circumstances, in Part, and Alignment of Final Determination With Final Antidumping Duty Determination*, 89 Fed. Reg. 96942 (Dep't Commerce Dec. 6, 2024), P.R. 342 ("*Preliminary Determination*").

On January 6, 2025, Xiamen Dalle provided December 2024 monthly Q&V data to its prior counsel, which represented it before Commerce in both the AD and CVD investigations. Prior counsel confirmed receipt of Xiamen Dalle's December 2024 Q&V data on the same day it was transmitted by the company. *See* Declaration of Zhikun Fan, Secretary of the Board of Xiamen Dalle ("Declaration") at ¶ 10.[1] Prior counsel submitted the December data in the AD investigation on January 15, 2025. *See* Letter from Mark Ludwikowski, Clark Hill PLC, to the U.S. Dep't of Commerce, re: *Certain Low Speed Personal Transportation Vehicles from the People's Republic of China: Submission of Monthly Quantity and Value Data*, ACCESS Document No. 4698411-01 (Jan. 15, 2025) (on record of Commerce Case No. A-570-176). Counsel did not submit the December 2024 monthly Q&V data in the CVD investigation. Xiamen Dalle was not aware that December 2024 monthly Q&V data that it provided to its prior counsel was not submitted in the CVD investigation. Commerce did not issue notice to Xiamen Dalle of the missed deadline, nor did it issue a supplemental questionnaire seeking the missing data from Xiamen Dalle.

At various points in the investigation, Commerce issued supplemental questionnaires to Xiamen Dalle. On November 14, 2024, Commerce issued a supplemental questionnaire to Xiamen Dalle regarding its responses to Section III of the initial CVD questionnaire. *See* Letter

---

[1]    Zhikun Fan's declaration is attached hereto as Exhibit 1 pursuant to CIT R. 81.

from Mark Hoadley, Program Manager, Office VII, to Xiamen Dalle New Energy Automobile Co., Ltd., re: *Supplemental Questionnaire* (Nov. 14, 2024), P.R. 323. Xiamen Dalle provided its response on November 19, 2024. *See* Letter from Mark Ludwikowski, Clark Hill PLC, to the U.S. Dep't of Commerce, re: *Response to Section III Countervailing Duty Supplemental Questionnaire* (Nov. 19, 2024), C.R. 201-202, P.R. 331 ("First Supplemental Questionnaire Response").

On March 3, 2025, Commerce issued Xiamen Dalle a second supplemental questionnaire regarding its response to Section III of the CVD questionnaire. *See* Letter from Mark Hoadley, Program Manager, Office VII, to Xiamen Dalle New Energy Automobile Co., Ltd., re: *Supplemental Questionnaire* (Mar. 3, 2025), C.R. 243, P.R. 429 ("Second Supplemental Questionnaire"). Xiamen Dalle submitted its response on March 17, 2025. *See* Letter from Mark Ludwikowski, Clark Hill PLC, to the U.S. Dep't of Commerce, re: *Response to the Second Supplemental Questionnaire* (Mar. 17, 2025), C.R. 269-277, P.R. 470-472 ("Second Supplemental Questionnaire Response").

Commerce also issued a supplemental questionnaire on March 10, 2025, related to the new subsidy allegations that it had initiated on February 7, 2025. *See* Memorandum from Dan Alexander, Int'l Trade Specialist, to Jill E. Pollack, Sr. Director, Office VII, re: *Decision Memorandum on New Subsidy Allegations* (Feb. 7, 2025), C.R. 219, P.R. 395; Letter from Mark Hoadley, Program Manager, Office VII, to Xiamen Dalle New Energy Automobile Co., Ltd., re: *Supplemental Questionnaire* (Mar. 10, 2025), P.R. 460 ("NSA Supplemental Questionnaire"). Xiamen Dalle provided its response to the NSA Supplemental Questionnaire on March 17, 2025. Letter from Mark Ludwikowski, Clark Hill PLC, to the U.S. Dep't of Commerce, re: *New*

*Subsidy Allegation Supplemental Questionnaire Response* (Mar. 17, 2025), C.R. 248, P.R. 467 ("Supplemental NSA Questionnaire Response").

On March 19, 2025, Commerce issued a second supplemental questionnaire related to the new subsidy allegations. *See* Letter from Mark Hoadley, Program Manager, Office VII, to Xiamen Dalle New Energy Automobile Co., Ltd., re: *New Subsidy Allegation Supplemental Questionnaire* (Mar. 19, 2025), P.R. 476 ("NSA Second Supplemental Questionnaire"). Xiamen Dalle submitted its response on March 24, 2025. *See* Letter from Mark Ludwikowski, Clark Hill PLC, to the U.S. Dep't of Commerce, re: *New Subsidy Allegation Supplemental Questionnaire Response* (Mar. 24, 2025), C.R. 281-282, P.R. 490 ("Second Supplemental NSA Questionnaire Response").

Commerce conducted verification of Xiamen Dalle's questionnaire responses from April 14, 2025, through April 16, 2025, and issued its corresponding verification report on May 9, 2025. *See* Letter from Mark Hoadley, Program Manager, AD/CVD Operations, Office VII, to Xiamen Dalle New Energy Automobile Co., Ltd., re: *Verification Agenda for Xiamen Dalle New Energy Automobile Co., Ltd.* (Apr. 2, 2025) C.R. 289, P.R. 500; *see* Memorandum from Dan Alexander, Int'l Trade Compliance Analyst, Office VII, to the File, re: *Verification of Questionnaire Responses Submitted by Xiamen Dalle New Energy Automobile Co., Ltd.* (May 9, 2025), C.R. 343, P.R. 567 ("Verification Report"). The missing quantity and value data for December 2024 was not discussed in the verification report. *See generally,* Verification Report.

In the *Final Determination*, Commerce noted that it had collected Q&V data from the respondents through the month of the publication of the *Preliminary Determination*, as initially indicated in the Q&V questionnaires issued in the proceeding. Final IDM at 31, P.R. 597; *see also* Q&V Questionnaire, P.R. 264. As a result, it followed its stated practice of including the

8

longest period up to the date of publication of the *Preliminary Determination*, *i.e.*, a six-month

base period (January – June 2024) and a six-month comparison period (July – December 2024).

Final IDM at 31, P.R. 597. As Commerce explained,

> {w}e agree . . . that Commerce's standard practice when calculating critical circumstances is to include the longest period up to the date of the preliminary determination, and per Commerce's Q&V Shipment Data Request, we requested this information through the month of the publication of the *Preliminary Determination*. During the course of the investigation, we collected additional monthly quantity and value data from Lvtong and Xiamen Dalle for the relevant periods. This resulted in Commerce expanding the critical circumstance analysis from a four to a six-month period, covering the longest period for which information is available up to the date of the preliminary determination, *per* Commerce's stated intentions within the Q&V Shipment Data Request.

*Id*. (internal citation omitted), P.R. 597.

In the *Final Determination*, Commerce also made an affirmative determination of critical

circumstances with regard to Xiamen Dalle based on the application of adverse facts available

("AFA") because of the missing December 2024 monthly Q&V data:

> In the final determination, we are applying AFA to Xiamen Dalle with respect to critical circumstances. As a result of critical circumstances allegations by the petitioner, we issued a request for monthly quantity and value of shipments of LSPTVs to the U.S. from the mandatory respondent companies. Specifically, in the Q&V Shipment Data Request, we asked the respondents to submit shipment data through the last day of the month of the publication of the *Preliminary Determination* (i.e., December 2024). Xiamen Dalle failed to place complete shipment data on the record, omitting data for December 2024. Due to the missing information concerning Xiamen Dalle's Q&V shipment data for December 2024, we are unable to analyze whether critical circumstances exist for Xiamen Dalle. Thus, we find that necessary information requested by Commerce was withheld by Xiamen Dalle, and that the application of AFA is warranted, pursuant to sections 776(a) and (b) of the Act, in finding that critical circumstances exist for Xiamen Dalle. For a complete discussion of Commerce's position, see Comment 4.

*Id.* at 7–8, P.R. 597;

On June 23, 2025, Commerce published its *Final Determination* in the CVD

investigation, announcing its affirmative determination of critical circumstances with regard to

Xiamen Dalle based on AFA. *See Final Determination*, P.R. 605. On June 23, 2025, Commerce also published its final determination in the AD investigation, announcing a negative determination of critical circumstances with regard to Xiamen Dalle. *See Certain Low Speed Personal Transportation Vehicles From the People's Republic of China: Final Determination of Sales at Less-Than-Fair-Value and Final Affirmative Determination of Critical Circumstances, in Part*, 90 Fed. Reg. 26530, 26531 (Dep't Commerce June 23, 2025) ("AD *Final Determination*").

Following the issuance of Commerce's final CVD determination, Xiamen Dalle's prior counsel initially informed the company that Commerce had made a negative final critical circumstances determination with regard to Xiamen Dalle. Declaration at ¶ 11. When Xiamen Dalle questioned the accuracy of this statement, the company's prior counsel corrected itself, indicating that Commerce had in fact made an affirmative final critical circumstances determination with regard to the company, while also falsely claiming first that Commerce's Final IDM made no mention of critical circumstances at all and then that this affirmative determination was due to the Chinese government's failure to cooperate with Commerce's investigation leading to an adverse inference. *See id.* at ¶¶ 13-15. Through review of Commerce's final decision memorandum, Xiamen Dalle became aware that Commerce had not received the company's December 2024 Q&V data in the CVD investigation. *Id.* at ¶ 14. When Xiamen Dalle questioned its prior counsel regarding the submission of this data, prior counsel erroneously claimed to Xiamen Dalle that the December 2024 Q&V data had been timely submitted, providing evidence of ACCESS submission for the *prior month*'s shipment data. *Id.* at ¶ 15. Xiamen Dalle pointed out that the purported evidence of submission was dated December 16, 2024 (*i.e.*, in the middle of the month), and therefore could not verify that the

December 2024 data had been submitted—the full-month data for December 2024 was not yet available at that time. *See id.* Prior counsel ignored the company when Xiamen Dalle asked directly for it to confirm that this indicated the December 2024 Q&V data was in fact not submitted. *See id.* Xiamen Dalle then issued another formal, written request for prior counsel to provide documentary proof for the timely submission of the December 2024 Q&V data. Finally, prior counsel acknowledged on August 28, 2025, that Xiamen Dalle's December 2024 Q&V data was not submitted in the CVD investigation. *Id.* ¶ 16.

On August 12, 2025, following the affirmative determination of the U.S. International Trade Commission, the CVD order was published in the *Federal Register*. *Certain Low-Speed Personal Transportation Vehicles From the People's Republic of China: Amended Final Antidumping Duty Determination and Antidumping Duty Order; Amended Final Determination of Countervailing Duty Investigation and Countervailing Duty Order*, 90 Fed. Reg. 38759 (Dep't Commerce Aug. 12, 2025), P.R. 617.  This appeal followed.

III.    <u>**STANDARD OF REVIEW**</u>

In reviewing a challenge to a final determination by Commerce, the Court "shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i). As explained in *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984), substantial evidence "is more than a mere scintilla," and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *DuPont Teijin Films USA v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether Commerce's conclusions are based on substantial evidence, the Court must consider "the record as a whole, including {evidence} which fairly

11

detracts from {the} weight" of Commerce's conclusions. *Target Corp. v. United States*, 609 F.3d 1352, 1358 (Fed. Cir. 2010) (internal quotation marks and citation omitted). Moreover, a determination based on inadequate reasoning cannot survive the "substantial evidence" standard of review. *See Chr. Bjelland Seafoods A/S v. United States*, 19 C.I.T. 35, 37 (1995) (citing *USX Corp. v. United States*, 655 F. Supp. 487, 489 (Ct. Int'l Trade 1987)).

An agency determination is unlawful when it is an abuse of discretion. *Celik Halat ve Tel Sanayi A.S. v. United States*, 557 F. Supp. 3d 1363, 1369 (Ct. Int'l Trade 2022) (citing *Brennan v. Dep't of Health & Hum. Servs.*, 787 F.2d 1559, 1564 (Fed. Cir. 1986), *cert. denied*, 479 U.S. 985 (1986)). Commerce abuses its discretion "when its decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." *Jindal Poly Films Ltd. v. United States*, 794 F. Supp. 3d 1384, 1391 (Ct. Int'l Trade 2025) (quoting *Consol. Bearings. Co. v. United States*, 412 F.3d 1266, 1269 (Fed. Cir. 2005) (citation omitted). As explained in *Grobest & I-Mei Indus. (Vietnam) Co. v. United States*, "{w}hen the record cannot support the agency's determination or the agency's exercise of discretion exceeds the limits of the statute, the agency has abused its discretion." 853 F. Supp. 2d 1352, 1363–64 (Ct. Int'l Trade 2012). In addition, it is well-settled that an agency "regulation which is not required by statute may, in appropriate circumstances, be waived and must be waived where failure to do so would amount to an abuse of discretion." *NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1207 (Fed. Cir. 1995); *Pro-Team Coil Nail Enterprise, Inc. v. United States*, 419 F. Supp. 3d 1319, 1331 (Ct. Int'l Trade 2019).

IV.    **ARGUMENT**

    A.    **Commerce's Affirmative Critical Circumstances Determination Was Unlawful and Unsupported by Substantial Evidence, Warranting Remand to Reopen the Record**

As demonstrated in the administrative record and herein, Xiamen Dalle was a cooperative respondent in Commerce's CVD investigation who did not withhold any requested information from the agency. Xiamen Dalle's December 2024 Q&V shipment data was not submitted to Commerce in the CVD investigation through no fault of its own but, rather, through the conduct of its prior counsel who committed significant and unusual breaches of an attorney's fiduciary duties and made repeated misrepresentations to Xiamen Dalle, which "vitiated" the agency relationship between them.

The single month of missing data was a minor deficiency in Xiamen Dalle's response to Commerce's monthly Q&V shipment data questionnaire, which could have been "fixed" very easily and well before the factual record closed. However, Commerce provided Xiamen Dalle with no notice or opportunity to correct, despite the fact that: (1) the single month of missing data related only to a simple, discrete calculation; (2) the missing data was on the companion AD record and already in Commerce's possession; and (3) the deadline for the CVD final determination was still five months away. Meanwhile, Commerce's critical circumstances finding in the *Final Determination*—based not on Q&V data but on an adverse inference applied to that data—would make Xiamen Dalle liable for tens of millions of dollars in additional CVD duties. This result is attributable solely to prior counsel's misconduct, as the companion AD determination demonstrates that, had the missing December 2024 Q&V data been on the record, Commerce would have reached a negative final critical circumstances determination with respect to Xiamen Dalle. On the whole, this is a clear case where the interests in fairness and accuracy

13

far outweigh the burden upon Commerce and the agency's interest in finality. The law and interests of justice require relief to Xiamen Dalle in this case.

For the reasons detailed below, Commerce's affirmative critical circumstances finding with respect to Xiamen Dalle was unlawful and unsupported by substantial evidence on the record. Remand to the agency is warranted to reopen the record and accept Xiamen Dalle's December 2024 Q&V shipment data.

1. *Xiamen Dalle Did Not Withhold Necessary Information Requested by Commerce, Making Commerce's Use of Facts Available with an Adverse Inference Baseless and Unlawful.*

In its *Final Determination*, based on the missing December 2024 Q&V shipment data, Commerce found that information it had requested was "withheld by Xiamen Dalle," and that application of AFA was therefore warranted with respect to its critical circumstances finding for Xiamen Dalle. *See* Final IDM at 8, P.R. 597. However, in the instant case, Xiamen Dalle cannot be found to have withheld information requested by Commerce and the agency's affirmative critical circumstances finding for Xiamen Dalle based on AFA is thus unlawful.

The Act instructs Commerce to employ a two-step analysis in determining whether to exercise its discretion to apply AFA. First, Commerce may resort to "facts otherwise available" only if (1) necessary information is not available on the record *or* (2) an interested party withholds information requested by the agency, fails to provide such information by the requested deadline, significantly impedes the proceeding, or provides information that cannot be verified. 19 U.S.C. § 1677e(a). Only when this threshold requirement is met *and* a second, separate finding is made that "an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information," Commerce "*may* use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available." 19 U.S.C. § 1677e(b)(1) (emphasis added).

14

In this case, Commerce's use of an adverse inference was predicated on its finding that Xiamen Dalle "withheld" information under 19 U.S.C. § 1677e(a) by failing to submit the December 2024 shipment data. *See* Final IDM at 8, P.R. 597. However, this finding lacks a proper basis when the relevant facts and circumstances are considered on the whole. Xiamen Dalle was a cooperative respondent throughout Commerce's investigation. Xiamen Dalle timely responded to each of Commerce's questionnaires, including the initial questionnaire, first supplemental questionnaire, second supplemental questionnaire, and additional questionnaires on newly alleged subsidy programs. *See* Letter from Mark Ludwikowski, Clark Hill PLC, to the U.S. Dep't of Commerce re: *Response to Section III Affiliation Questionnaire* (Sept. 26, 2024), C.R. 55, P.R. 175 ("Affiliation Questionnaire Response"); Letter from Mark Ludwikowski, Clark Hill PLC, to the U.S. Dep't of Commerce, re: *Response to the Remaining Portion of Section III of the Initial Questionnaire* (Oct. 22, 2024), C.R. 58-76, P.R. 195-196 ("Initial Section III Questionnaire Response"); First Supplemental Questionnaire Response, C.R. 201-202, P.R. 331; Second Supplemental Questionnaire Response, C.R. 269-277, P.R. 470-472; Letter from Mark Ludwikowski, Clark Hill PLC, to the U.S. Dep't of Commerce, re: *Response to the New Subsidy Allegations Questionnaire* (Feb. 24, 2025), C.R. 221-232, P.R. 411-412; Supplemental NSA Questionnaire Response, C.R. 248, P.R. 467; Second Supplemental NSA Questionnaire Response, C.R. 281-282, P.R. 490.

Commerce also conducted a verification of Xiamen Dalle's questionnaire responses, with which Xiamen Dalle fully cooperated. *See* Verification Report, C.R. 343, P.R. 567. The non-submission of the December 2024 Q&V data was an anomaly in Xiamen Dalle's otherwise stellar record of cooperation and, as discussed below, the respondent cannot be held accountable

15

for it because its prior counsel "vitiat{es}" the agency relationship between an attorney and client through its significant and unusual breaches of attorney fiduciary duties.

In similar situations involving attorney misconduct, federal courts have relied on principles of agency law and an attorney's heightened fiduciary duties to grant relief to clients. Under principles of agency law, a principal (the client) is not charged with an agent's actions or knowledge when the agent (the attorney) is acting adversely to the principal's interests. *See* Restatement (Third) of Agency §§ 5.03, 5.04 (2006)[2]; *see also In re Bonnanzio,* 91 F.3d 296, 303 (2d Cir. 1996) ("{A} principal is not charged with an agent's misdeeds if the agent acts in a manner completely adverse to the principal's interest."). In the attorney-client context, federal courts acknowledge that when "the evidence is clear that the attorney and {the} client were not acting as one," a client "may not be held accountable for his attorney's misconduct." *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1169, 1172 (9th Cir. 2002) (quoting *Primbs v. United States*, 4 Cl. Ct. 366, 370 (1984), *aff'd*, 765 F.2d 159 (Fed. Cir. 1985)), *as amended on denial of reh'g and reh'g en banc* (Apr. 24, 2002).

This standard is met where the attorney has failed his heightened fiduciary duties in a significant and unusual manner, which "vitiat{es} the agency relationship" between an attorney and client. *Cmty. Dental Servs.*, 282 F.3d at 1171; *see also Baldayaque v. United States*, 338 F.3d 145 (2d Cir. 2003); *DiMasi v. Sec'y of Health & Hum. Servs.,* No. 2022-1854, 2023 WL 4697122 (Fed. Cir. July 24, 2023). In *Baldayaque*, the attorney failed to file an important petition as directed by the client, conducted no legal research yet erroneously informed the client that it

---

[2]    This Court may consider the Restatement of agency law for guidance under appropriate circumstances. *See Virgin Islands Port Auth. v. United States*, 922 F.3d 1328, 1335 (Fed. Cir. 2019) ("When discussing the contours and scope of the common law, the Supreme Court has instructed that it is appropriate for us to look to the pertinent Restatement . . . ") (citations omitted); *id.* (applying principles of agency law to determine whether the Virgin Islands Port Authority had revoked its authorization for U.S. Customs and Border Protection to collect duties)).

16

was "too late" to file the petition, failed to communicate with the client about the case, and falsely assured the client that "everything had been done that could be done." *Baldayaque*, 338 F.3d at 152–153. In granting relief to the client, the court found that the attorney's conduct violated the duty of loyalty, which encompasses an obligation to defer to the client's wishes on major litigation decisions; the duty of competency, which "requires the legal knowledge, skill, *thoroughness* and *preparation* reasonably necessary for the representation"; and the duty to "keep {the} client reasonably informed about the status of {the case} and . . . to explain {the} matter to the extent reasonably necessary to permit {the client} to make informed decisions regarding the representation." *Id.* at 152 (internal quotation marks and citation omitted) (emphasis in original). As the court aptly put, the attorney's actions in that case "were far enough outside the range of behavior that reasonably could be expected by a client that they may be considered 'extraordinary,'" such that they could not be imputed to the client. *Id.*

Similarly, in *Community Dental Services*, the attorney failed to perform his duties as an attorney and agent in multiple areas of pre-trial work including by filing an answer two weeks late. *Cmty. Dental Servs.*, 282 F.3d at 1171. After faulting the attorney for his dereliction of duty, the court noted *emphatically*:

> Moreover, Salmonsen {, the attorney,} explicitly represented to Tani {, the client,} that the case was proceeding properly. *See Jackson v. Washington Monthly Co.*, 569 F.2d 119, 122 (D.C. Cir. 1977) (emphasizing guiltlessness of client regarding default judgment when attorney misled client by reassuring him that litigation was going smoothly); *Primbs*, 4 Cl.Ct. at 369–70 (granting relief in part because counsel "actively misled and lulled his client into believing this case was proceeding smoothly"). Both Salmonsen and Stein repeatedly told Tani that Salmonsen was performing his responsibilities, thereby *deliberately misleading* him and depriving him of the opportunity to take action to preserve his rights. It was only after the district court had granted CDS's motion to strike Tani's answer and ordered a default judgment against him that Tani received his first inkling of Salmonsen's egregious performance and of his failure to provide him with the representation to which he was entitled. In sum, Salmonsen was grossly negligent in his handling of Tani's defense and he deliberately deceived Tani about the

services he was supposed to be performing. In light of these facts, we hold that Tani has demonstrated "extraordinary circumstances" beyond his control that merit relief from the default judgment.

*Id*. (emphasis added). Thus, attorney conduct to mislead a client weighs heavily in favor of granting relief to the client. *See also* Restatement (Third) Law Governing Lawyers § 16 (2000) (a lawyer's duties to a client include "act{ing} with reasonable competence and diligence" and "deal{ing} honestly with the client").[3]

Likewise, in *DiMasi*, the court found unusual circumstances justifying relief to the client existed where the attorney disclaimed a legal claim without consultation with or authorization from the client. In that case, the attorney never told the client about the availability of such claim, much less explained or obtained approval for the choice not to present such a claim. *DiMasi*, 2023 WL 4697122 at *9. Based on these facts, the court concluded that the attorney's conduct made it "clearly unreasonable to bind {the client} to counsel's choice to disclaim the potentially critical significant-aggravation claim for compensation." *Id*. at *10.

In the instant case, Xiamen Dalle's prior counsel never informed Xiamen Dalle of its failure to submit the client's December 2024 Q&V data of its own accord. Notably, Xiamen Dalle provided such data to prior counsel on January 6, 2025, *i.e.*, well before the January 15 deadline for submission, and prior counsel confirmed receipt. *See* Declaration at ¶10. Nevertheless, prior counsel not only failed its obligation to submit the data *per* the client's instruction but also took no action to notify the client or any efforts to remedy the situation; instead, prior counsel acted like nothing had happened and created a false appearance to Xiamen Dalle that its CVD case was proceeding properly. After the *Final Determination* was issued, prior counsel first told Xiamen Dalle that Commerce had made a negative final critical

---

[3] Federal courts have also cited the Restatement of law governing lawyers in this context. *See, e.g.*, *Baldayaque*, 338 F.3d 145 at 152; *DiMasi,* 2023 WL 4697122 at *9.

18

circumstances determination with respect to the company—the *opposite* of what Commerce actually found. Xiamen Dalle conducted its own inquiry into the *Final Determination* and posed pointed questions to prior counsel on the critical circumstances determination. Prior counsel provided a *series* of incorrect and misleading explanations in response, which changed from (1) Commerce reached a negative final critical circumstances determination with respect to Xiamen Dalle; (2) there was no mention of critical circumstances in Commerce's Final IDM at all; (3) Commerce's affirmative final critical circumstances determination for Xiamen Dalle was based on the Chinese government's failure to cooperate; and (4) Commerce was incorrect that Xiamen Dalle had failed to submit the December 2024 data, falsely claiming that such data had been submitted to Commerce and sending the submission record for the *prior month*'s data as evidence. This pattern of misrepresentations by prior counsel persisted, despite having been challenged by Xiamen Dalle multiple times with directly contradicting evidence. *See* Declaration at ¶¶ 12-16. Prior counsel then ignored the company's express request for it to confirm the December 2024 data was in fact not submitted, after Xiamen Dalle pointed out that prior counsel's purported evidence of submission could not have been for the December 2024 Q&V data as it was dated December 16, 2024—*i.e.*, when the December full-month shipment data was not yet available (the record was clearly for the submission of the November 2024 shipment data). *Id*. at 15. *It was only after Xiamen Dalle was forced to make another request for documentary proof that the December 2024 data was properly submitted that prior counsel finally acknowledged that it had failed to submit the data to Commerce. Id.* ¶ 16. Prior counsel's acknowledgement came nearly two months after the *Final Determination* was published in the *Federal Register*. *Id.*

19

Where, as here, prior counsel has "abandoned his duties as an attorney and agent," counsel has "vitiat{ed} the agency relationship" that would, under normal circumstances, presume attribution to the client the acts of his attorney. *See Cmty. Dental Servs.*, 282 F.3d at 1171. By failing to submit the December 2024 data, prior counsel refused to do what was requested by the client on a "fundamental matter." *Baldayaque*, 338 F.3d 145 at 152. By never informing Xiamen Dalle of such failure and acting as if nothing had happened, prior counsel also failed to "keep {the} client reasonably informed about the status of {the case} and . . . to explain {the} matter to the extent reasonably necessary to permit {the client} to make informed decisions regarding the representation." *Id*. As a result, Xiamen Dalle was unjustly deprived of its right to make an informed decision about prior counsel's mistake and any opportunity to take remedial action and seek administrative relief. Such major litigation decisions cannot be made without adequate consultation with and prior authorization from the client, *id*.; *DiMasi*, 2023 WL 4697122 at *9, neither of which was present in this case. And by creating a false appearance to Xiamen Dalle that its CVD case was "going smoothly" and making repeated material misrepresentations to the client—with a clear intent to mislead Xiamen Dalle and prevent it from finding out the true reason for Commerce's affirmative determination—prior counsel totally abandoned its duties of loyalty and honesty to Xiamen Dalle and acted in a manner completely adverse to the client's interest. *See Cmty. Dental Servs.*, 282 F.3d at 1171; *Baldayaque*, 338 F.3d at 153 (falsely assuring the client that "everything had been done that could be done"); *see also* Restatement (Third) of Agency §§ 5.03, 5.04 (2006). In sum, this case is not about prior counsel making an inadvertent common mistake—rather, it is a highly unusual case where prior counsel essentially "abandoned" the representation by a series of significant breaches of the most

20

fundamental duties that an attorney owed to its client, including by making repeated misrepresentations in an attempt to mislead the client.

Thus, the facts and circumstances considered on the whole provide no basis for finding that Xiamen Dalle withheld information from Commerce. The sole basis for Commerce's finding was that the December 2024 Q&V shipment data was missing from the CVD record. However, as discussed above, this cannot be attributed to Xiamen Dalle because prior counsel's significant and unusual breaches of an attorney's heightened fiduciary duties and persistent, deliberate misrepresentations have "vitiated" the agency relationship between the parties and, as a result, Xiamen Dalle cannot be held accountable for its prior counsel's conduct. Therefore, Commerce's affirmative critical circumstances finding for Xiamen Dalle based on AFA rests on an invalid finding and constitutes a misuse of the Commerce's statutory authority under 19 U.S.C. § 1677e.

2. *Commerce Failed in Its Statutory Obligation to Notify Xiamen Dalle of Deficiencies in Its Response and Provide an Opportunity to Cure, Precluding Commerce from Use of "Facts Otherwise Available."*

Commerce's use of facts available is subject to its statutory obligation to provide a respondent with notice of the deficiencies in its submissions and an opportunity to remedy such deficiencies—which Commerce did not do in this case.

Section 776 of the Act provides that when the requisite statutory condition is met, the Department is authorized, "*subject to section 1677m(d) of this title,* {to} use the facts otherwise available in reaching the applicable determination under this subtitle." 19 U.S.C. § 1677e(a) (emphasis added). Section 782 of the Act, in turn, provides that if Commerce determines a response to a request for information is deficient, Commerce "*shall* promptly inform the person submitting the response of the nature of the deficiency *and shall*, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency in light of the time limits established for the completion of investigations." 19 U.S.C. § 1677m(d) (emphasis added).

21

This "statutory entitlement to notice and opportunity to remedy any deficiency is unqualified." *Hitachi Energy USA Inc*. v. *United States*, 34 F.4th 1375, 1384 (Fed. Cir. 2022), *opinion modified on denial of reh'g*, No. 2020-2114, 2022 WL 17175134 (Fed. Cir. Nov. 23, 2022); *see also Eregli Demir v. Celik Fabrikalari T.A.S*, 308 F. Supp. 3d 1297, 1318 (Ct. Int'l Trade 2018) (emphasizing that the statutory requirements in 19 U.S.C. § 1677m(d) are mandatory and are not mitigated by the respondent's burden to provide accurate information); *Laerdal Med. Corp. v. Int'l Trade Comm'n*, 910 F.3d 1207, 1212 (Fed. Cir. 2018) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement.") (citations omitted).

Thus, Commerce's use of facts otherwise available to fill a gap in the record under 19 U.S.C. § 1677e(a), which is a *precondition* for applying AFA, is subject to its obligation under § 1677m(d) to provide notice and an opportunity to remedy the deficiency in the record. *Hitachi Energy*, 34 F.4th at 1385 ("Section 1677e(a)(2)(D) requires that the authorization to rely on adverse facts available is subject to § 1677m(d), which requires Commerce to provide notice and an opportunity to remedy a deficiency"); *see also Baroque Timber Indus. (Zhongshan) Co. v. United States*, 766 F. Supp. 3d 1296, 1313 (Ct. Int'l Trade 2025). As the Federal Circuit has explained, "Commerce has no authority to apply adverse facts and inferences unless the respondent has failed to provide requested information when notified of the deficiency, and has not acted to the best of its ability in responding to such requests." *Hitachi Energy*, 34 F.4th at 1385 (citing 19 U.S.C. § 1677e(a)).

Commerce was therefore required to place Xiamen Dalle on notice of the deficiency in its response to Commerce's *Request for Monthly Quantity and Value Shipment Data* (imposing on-going obligations on the respondent in broad terms) and provide Xiamen Dalle with an opportunity to remedy that deficiency. *See, e.g.*, *Baroque Timber*, 766 F. Supp. 3d at 1313 (citing

cases holding that Commerce satisfies its obligation under 19 U.S.C. § 1677m(d) when its supplemental questionnaire specifically points out and requests clarification of the deficient responses). However, Commerce failed to do so in this case. Xiamen Dalle properly responded to Commerce's monthly Q&V data questionnaire for all prior months and the only issue was the December 2024 shipment data. The record is clear that Commerce never informed Xiamen Dalle that its response to the monthly Q&V data questionnaire was deficient, nor issued a supplemental request for the December 2024 shipment data. Notably, on March 3, 2025, Commerce issued Xiamen Dalle a supplemental questionnaire. *See* Second Supplemental Questionnaire, C.R. 243, P.R. 429. However, Commerce's March 3, 2025 supplemental questionnaire did not alert Xiamen Dalle that its critical circumstances data was deficient or request that Xiamen Dalle submit the missing December 2024 data. Commerce also issued two additional supplemental questionnaires related to new subsidy allegations in March 2025, demonstrating that requesting the one missing month of shipment data in a supplemental questionnaire would not have prevented Commerce from meeting the statutory time limit in which to complete the investigation. *See* NSA Supplemental Questionnaire, P.R. 460; NSA Second Supplemental Questionnaire, P.R. 476; *see also* 19 U.S.C. § 1677m(d)). As in *Hitachi Energy*, "{t}he record herein provides no basis for an adverse inference and recourse to adverse facts available" because "any incompleteness" of shipment data "could have been remedied." *Hitachi Energy,* 34 F.4th at 1386.

In short, "Commerce has no authority to apply adverse facts and inferences unless the respondent has failed to provide requested information *when notified of the deficiency*." *Hitachi Energy*, 34 F.4th at 1385 (citing cases holding that Commerce must raise identified deficiencies with respondents and must give them an opportunity to correct or supplement any deficient

23

information) (emphasis added). As the "primary purpose" of the trade law is to determine rates as accurately as possible, Commerce must be held to those statutory provisions, like 19 U.S.C. § 1677m(d), that are designed to ensure the accuracy of the record. *Bio-Lab, Inc. v. United States*, 435 F. Supp. 3d 1361, 1374 (Ct. Int'l Trade 2020). Commerce did not follow its statutory obligation under § 1677m(d) in this case. Accordingly, the Court should remand the *Final Determination* so that Commerce may reopen the record and accept the December 2024 Q&V shipment data onto the record of the CVD investigation for the purpose of its critical circumstances finding with respect to Xiamen Dalle.

3.  *Commerce's Decision to Apply AFA to Xiamen Dalle Was Unsupported by Substantial Evidence and Was an Abuse of Discretion.*

As discussed above, application of AFA requires a second, separate finding that the respondent "has failed to cooperate by not acting to the best of its ability to comply with" Commerce's information request. 19 U.S.C. § 1677e(b)(1). Commerce did not make this finding in the *Final Determination*, much less explain *why* it might conclude so based on a minor deficiency in Xiamen Dalle's monthly Q&V response and given Xiamen Dalle's otherwise stellar record of cooperation. *See Chr. Bjelland Seafoods*, 19 C.I.T. at 37 (finding that a determination based on inadequate reasoning cannot survive the substantial evidence standard of review).

Separately, Commerce's application of adverse inferences in using facts available is discretionary. Given the unique facts of this case, Commerce's use of an adverse inference here to find that critical circumstances existed for Xiamen Dalle's imports was an abuse of its discretion. As this Court has previously instructed, "Not every failure to comply with a filing deadline will result in authority to use an adverse inference against an interested party." *Celik Halat*, 557 F. Supp. 3d at 1363, 1375. When the Court weighs the traditional interests in

24

accuracy and fairness against the burden placed on Commerce in accepting untimely filed factual information, it should conclude that the interest of fairness far outweighs the agency's interest in finality of its determination and Commerce's AFA finding was therefore an abuse of discretion.

As noted above, the AFA statute provides that Commerce "*may* use an inference that is adverse to the interests of {a} party {that failed to cooperate} in selecting from among the facts otherwise available." 19 U.S.C. § 1677e(b)(1)(A) (emphasis added). Use of the word "may" in the statute indicates discretion. *Cf. Laerdal Med. Corp.,* 910 F.3d at 1212 ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement.") (citations omitted). Thus, Commerce's use of an adverse inference is discretionary. While acknowledging Commerce's discretion to set deadlines for submissions to the agency, this Court reviews "on a case-by-case basis whether the interests of accuracy and fairness outweigh the burden placed on {Commerce} and the interest in finality" of its decisions. *Grobest & I-Mei Indus. (Vietnam) v. United States*, 815 F. Supp. 2d 1342, 1365 (Ct. Int'l Trade 2012); *Jindal Poly Films*, 794 F. Supp. 3d at 1384. In fact, it is because Commerce's regulatory deadlines are *discretionary*, and not mandated by statute, that they "may, in appropriate circumstances, be waived and *must be waived* where failure to do so would amount to an abuse of discretion." *NTN Bearing*, 74 F.3d at 1207 (emphasis added).

In this analysis, the Court is guided first by the remedial purpose of the trade law. *See Grobest*, 815 F. Supp. 2d at 1365 (citing *Chaparral Steel Co. v. United States*, 901 F.2d 1097, 1103-04 (Fed. Cir. 1990)); *see also Bio-Lab, Inc.*, 435 F. Supp. 3d at 1374 ("the primary purpose of the AFA statute is not to punish companies, but rather to calculate accurate rates.") (citation omitted). The Court then "weighs 'the burden imposed upon the agency by accepting the late submission'" along with the "interests of accuracy and fairness." *Grobest*, 815 F. Supp. 2d at

1365. In making this determination, the Court has previously considered as relevant factors whether the AFA result is likely inaccurate and disproportionate, *id.* at 1376, the particular circumstances of the respondent, such as its record of cooperation, *id.* at 1367, and other attenuating circumstances unique to the respondent, such as late selection as a mandatory respondent. *See Jindal Poly Films*, 794 F. Supp. 3d at 1387.

Here, Commerce's interest in finality is far outweighed by the interests of accuracy and fairness. The results of Commerce's AD investigation, which used the same period of time for the critical circumstances analysis, indicated that Commerce's result in the CVD investigation was inaccurate. AD *Final Determination*, and accompanying Memorandum from Scot Fullerton, Acting Deputy Ass't Sec'y, AD/CVD Operations, to Abdelali Elouradia, Deputy Ass't Sec'y, Enf. & Compliance, re: *Issues and Decision Memorandum for the Final Affirmative Determination in the Less-Than-Fair-Value Investigation of Certain Low Speed Personal Transportation Vehicles from the People's Republic of China* (June 16, 2025) ("AD Final IDM"). In the companion AD investigation, Xiamen Dalle's prior counsel *did* submit the December 2024 Q&V data to Commerce. *See* Letter from Mark Ludwikowski, Clark Hill PLC, to the U.S. Dep't of Commerce, re: *Certain Low Speed Personal Transportation Vehicles from the People's Republic of China: Submission of Monthly Quantity and Value Data*, ACCESS Document No. 4698411-01 (Jan. 15, 2025) (on record of Commerce Case No. A-570-176); AD Final IDM at 6-7. There, Commerce made a negative determination of critical circumstances with regard to Xiamen Dalle. *See* AD *Final Determination*. For purposes of calculating whether imports of the subject merchandise were "massive" over a "relatively short period," 19 U.S.C. §§ 1671b(e)(1), 1671d(a)(2), the base and comparison periods Commerce used were identical in

26

the CVD and AD investigations. *Compare* Final IDM at 32-33, P.R. 597, *with* AD Final IDM at 5-7.

The "particularly severe" consequences of this error in the CVD record render the result "grossly disproportionate" to the "relatively minor" mistake that was made. *See Artisan Mfg. Corp. v. United States*, 978 F. Supp. 2d 1334, 1347 (Ct. Int'l Trade 2014) ("In the circumstances of this case, Commerce attached a consequence that was grossly disproportionate to the mistake that was made"). Commerce's critical circumstances finding in the *Final Determination*—based not on Q&V data but on an adverse inference applied to that data—would make Xiamen Dalle liable for tens of millions of dollars in additional CVD duties. Especially in light of Xiamen Dalle's record of otherwise full cooperation with Commerce's investigation, Commerce's use of an adverse inference "worked a substantial hardship" upon Xiamen Dalle and resulted in an inaccurate rate when compared to the result in the AD *Final Determination*, thereby exceeding the agency's discretion. *See Grobest*, 815 F. Supp. 2d at 1366.

As for the particular circumstances of the respondent, *see id.* at 1367, Xiamen Dalle otherwise fully cooperated with Commerce's CVD investigation. Xiamen Dalle timely responded to each of Commerce's questionnaires, including the initial questionnaire, first supplemental questionnaire, second supplemental questionnaire, and additional questionnaires on newly alleged subsidy programs. *See* Affiliation Questionnaire Response, C.R. 55, P.R. 175; Initial Section III Questionnaire Response, C.R. 58-76, P.R. 195-196; First Supplemental Questionnaire Response, C.R. 201-202, P.R. 331; Second Supplemental Questionnaire Response, C.R. 269-277, P.R. 470-472; NSA Questionnaire Response, C.R. 221-232, P.R. 411-412; Supplemental NSA Questionnaire Response, C.R. 248, P.R. 467; Second Supplemental NSA Questionnaire Response, C.R. 281-282, P.R. 490. Commerce also conducted a verification of

Xiamen Dalle's questionnaire responses, with which Xiamen Dalle fully cooperated. *See* Verification Report, C.R. 343, P.R. 567.

By contrast, the burden on Commerce of accepting the December 2024 shipment data onto the CVD record, either by a supplemental questionnaire or *sua sponte*, would have been minimal. First, the missing December 2024 Q&V data was a one-time occurrence related to only one month of shipment data. Second, Commerce's critical circumstances calculation is a simple, straightforward calculation done in a stand-alone Excel worksheet and having no impact on other aspects of the CVD investigation. *See* Memorandum from Dan Alexander, Int'l Trade Compliance Analyst, to the File, re: *Final Analysis of Critical Circumstances Shipment Data* (June 16, 2025) at Attachment, C.R. 362-363, P.R. 606. Third, although the data was on the record of a separate segment, *i.e.* the companion AD investigation, Commerce was in possession of the data.

In view of these facts, the burden on Commerce of requesting the single month of missing data in a supplemental questionnaire or accepting the data onto the CVD record *sua sponte* would have been minimal. As in *NTN Bearing*, doing so "would neither have required beginning anew nor have delayed making the final determination," because the additional data involved was very limited; related only to a discrete, simple calculation; and was already in Commerce's possession. *NTN Bearing,* 74 F.3d at 1208. Thus, a "straightforward" adjustment to the record was "all that was required." *Id.*; *see also Grobest*, 815 F. Supp. 2d at 1367 ("every indication suggests that the burden of reviewing the {data} would not be great"). Also, Commerce's issuance of a supplemental questionnaire on March 3, 2025, and two new subsidy questionnaires thereafter, further support that requesting the data in a supplemental questionnaire would not have caused undue delay or any other adverse consequence for Commerce's

28

investigation. Second Supplemental Questionnaire, C.R. 243, P.R. 429; NSA Supplemental Questionnaire, P.R. 460; Supplemental NSA Questionnaire, C.R. 249, P.R. 467; NSA Second Supplemental Questionnaire, P.R. 476; *see also Artisan*, 978 F. Supp. 2d at 1347 ("Although the delay in {Commerce's} receiving {respondent's} Q&V response would have been inconsequential, the same cannot be said for the result Commerce brought about in this case."). By all indications, requesting the additional one month of data in a supplemental questionnaire or accepting the data onto the CVD record *sua sponte* would have been inconsequential to Commerce's administration of the proceeding.

Relief from the severe consequences of this mistake is further warranted given prior counsel's conduct that obscured the mistake from Xiamen Dalle, depriving it of basic notice and counsel that could have acted to correct the CVD record. Xiamen Dalle was misled and lulled into believing its CVD case was "going smoothly" by prior counsel, who continued to make misrepresentations on the critical circumstances issue even *after* the *Final Determination*. Declaration at ¶¶ 11-16. The Court should take into consideration this highly unusual circumstance in fashioning an appropriate remedy. *Cf. Cmty. Dental Servs.*, 282 F.3d at 1170 ("When an attorney is grossly negligent, as counsel was here, the judicial system loses credibility as well as the appearance of fairness, if the result is that an innocent party is forced to suffer drastic consequences."). As this Court has previously instructed, "Not every failure to comply with a filing deadline will result in authority to use an adverse inference against an interested party." *Celik Halat*, 557 F. Supp. 3d at 1375 ("As a general matter, an attorney's inadvertently missing a filing deadline can be described as a failure to cooperate that is attributed to the client. But in this circumstance, the fact of the missed deadline, standing alone, did not justify {Commerce's} use of an adverse inference when determining the subsidy rate . . . .").

Moreover, the purpose of applying AFA is to induce respondents' future cooperation, not to punish past non-cooperation with punitive rates. *F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000) ("the purpose of section 1677e(b) is to provide respondents with an incentive to cooperate, not to impose *punitive*, aberrational, or uncorroborated margins) (emphasis added); *Bio-Lab, Inc.*, 435 F. Supp. 3d at 1374. While "collateral" impact may be permitted in limited circumstances, this Court has advised Commerce "to avoid such impact if relevant information exists elsewhere on the record." *See, e.g.*, *Archer Daniels Midland Co. v. United States*, 917 F. Supp. 2d 1331, 1342 (Ct. Int'l Trade 2013). In *SKF USA Inc. v. United States*, the Court concluded that it "cannot accept a construction of 19 U.S.C. 1677e(b) under which the party who suffers the effect of the adverse inference is not the party who failed to cooperate." 675 F. Supp. 2d 1264, 1277 (Ct. Int'l Trade 2009) (finding that application of AFA to mandatory respondent based on an unaffiliated supplier's failure to respond to requests for information was an abuse of Commerce's discretion). The Court should come to the same conclusion here. As discussed in Section IV.A.1, in this case the failure to submit the December 2024 shipment data cannot be attributed to Xiamen Dalle, because the significant and unusual breaches of fiduciary duties and persistent, deliberate misrepresentations have "vitiated" the agency relationship between prior counsel and the company. Under these facts, Commerce's decision to hold Xiamen Dalle accountable for prior counsel's conduct not only unlawfully punished an innocent party but also did not serve to induce future cooperation.

In short, in this case the interests in fairness and accuracy far outweigh the burden upon the agency and the agency's interest in finality. Therefore, Commerce's application of AFA to Xiamen Dalle, based on a truly minor yet highly distortive deficiency (and one with

30

disproportionately harsh impacts) and where the respondent suffered from significant and unusual breaches of fiduciary duties, was an abuse of discretion.

> **B.    Prior Counsel's Conduct Impugns the Integrity of the Agency Proceeding and Warrants a Remand to Reopen the Record**

The Federal Circuit has held that, where new evidence comes to light to make a *prima facie* case that the agency proceeding under review has been tainted by facts which call into question the integrity of the agency's proceedings, this Court must remand for Commerce to reconsider its decision in light of this new evidence. *Home Prods. Int'l v. United States*, 633 F.3d 1369, 1378-80 (Fed. Cir. 2011). Here, new evidence that came to light after Commerce's *Final Determination* demonstrates that Xiamen Dalle's December 2024 Q&V shipment data was not submitted to Commerce in the CVD investigation through no fault of its own but, rather, through the conduct of Xiamen Dalle's prior counsel which hid the mistake, prevented Xiamen Dalle from timely correcting the agency record, and made repeated misrepresentations with a clear intent to conceal and mislead. This new evidence presents a *prima facie* case that the underlying agency proceeding has been tainted in a way that calls into question the integrity of that proceeding. Accordingly, the Court should remand so that Commerce may reopen the record to accept and consider Xiamen Dalle's December 2024 shipment data.

To recap, Xiamen Dalle's prior counsel did not notify the company when it failed to submit the December 2024 Q&V shipment data and instead proceeded as if nothing had happened. After the *Final Determination* was issued, prior counsel initially explained to the company that Commerce made a *negative* final critical circumstances determination with respect to Xiamen Dalle. Declaration at ¶ 12. After Xiamen Dalle asked for proof of this result in the *Final Determination*, prior counsel referenced a document that Xiamen Dalle pointed out was Commerce's <u>*Preliminary*</u> *Determination*, not the *Final Determination*. *Id.* When that explanation

failed, prior counsel changed its story to suggest that there was no mention of critical circumstances in the *Final Determination* at all and then that the Government of China's failure was the reason why Commerce applied AFA to Xiamen Dalle. *Id.* at ¶ 13. Astonishingly, even after having been confronted with Commerce's direct statements referencing the failure to "place complete shipment data on the record, omitting data for December 2024," Final IDM at 8, P.R. 597, prior counsel continued to maintain that Xiamen Dalle's December 2024 Q&V data had been submitted in the CVD investigation. Declaration at ¶ 15. Once Xiamen Dalle pointed out that the purported evidence of submission provided was actually for the *previous month*, prior counsel ignored Xiamen Dalle's specific request for confirmation that the December 2024 shipment data was in fact not submitted. *Id.* at ¶ ¶ 14-16. Finally, nearly two months after the *Final Determination* was published in the *Federal Register* and facing another formal request from Xiamen Dalle to provide documentary proof for the correct data, Xiamen Dalle's prior counsel admitted that the December 2024 Q&V data had not been submitted to Commerce in the CVD investigation. *Id.* at ¶ 16.

In this case, prior counsel's conduct, which was documented in great detail and with actual quotes in Xiamen Dalle's legal declaration, has tainted the CVD investigation and called the integrity of the proceeding into serious question. *See Home Prods. Int'l*, 633 F.3d at 1378 ("{W}e see no reason why parties other than the administrative agency cannot also request reopening or a remand for the consideration of new and material evidence."); *see also Tianjin Magnesium Int'l Co., Ltd. v. United States*, 836 F. Supp. 2d 1377, 1381 (Ct. Int'l Trade 2012) ("The 'prima facie case' prescribed by *Home Products* is not whether a party has committed common law fraud, but rather whether the proceedings themselves were 'tainted by material

32

fraud'; This inquiry is broader, and less exacting, than a determination regarding whether the conduct of a party has met the legal elements of fraud.").

The integrity of an agency proceeding is called seriously into question where, as here, a respondent has been deprived of basic notice, an opportunity to defend its interest, and the right to loyal, honest and competent counsel by dishonest and deceitful conduct. Commerce has "a duty to accord fairness to the parties that appear before it." *SKF*, 675 F. Supp. 2d at 1276. The fairness principle and due process require that a respondent before Commerce be given fair notice and a meaningful opportunity to defend its interest. *Tai-Ao Aluminium (Taishan) Co. v. United States*, 983 F.3d 487, 494–95 (Fed. Cir. 2020) ("This notice requirement is designed to avoid unfairness to importers and foreign exporters.").

Here, due to prior counsel's conduct, which involved persistent acts of concealment and deceit, Xiamen Dalle has been deprived of basic notice about the missing shipment data and a meaningful opportunity to seek correction of the CVD record.[4] An attorney's duties of loyalty, competency, honesty, keeping the client reasonably informed, and deferring to the client on major litigation decisions should have protected these fundamental rights to a respondent before Commerce. However, prior counsel, acting in an utterly dishonest and actively misleading manner, failed all of these duties in a highly unusual and grave fashion. The facts and circumstances of this case are extraordinary and go to the very heart of the interest of protecting the integrity of an agency proceeding. The judicial system and Commerce would "lose credibility as well as the appearance of fairness" if "an innocent party {like Xiamen Dalle were to be} forced to suffer drastic consequences" as a result of prior counsel's abandoning fiduciary duties

---

[4]    Where, as here, prior counsel has "abandoned his duties as an attorney and agent," counsel has "vitiat{ed} the agency relationship" that would, under normal circumstances, presume attribution to the client the acts of his attorney. *See Cmty. Dental Servs.*, 282 F.3d at 1171.

33

and deceitful conduct which deprived Xiamen Dalle of fundamental fairness and basic procedural rights. *Cmty. Dental Servs.*, 282 F.3d at 1170.

Finally, prior counsel's misconduct not only is material to Commerce's final critical circumstances determination but also has caused grave consequences. Here, unless the court grants it relief, Xiamen Dalle would be liable for tens of millions of dollars in additional CVD duties, which is attributable solely to prior counsel's misconduct. Specifically, but for the conduct of Xiamen Dalle's prior counsel, Xiamen Dalle's December 2024 data would have been on the record of Commerce's CVD investigation—just as it was on the record of the companion AD investigation—and Commerce would have had all of the requested months of Q&V data. Moreover, with the December 2024 Q&V data included in the calculation, Commerce's critical circumstances determination would have been negative, as evidenced by the AD investigation record. *See* AD *Final Determination*.

In short, in this case strong evidence of prior counsel misconduct came to light after Commerce's *Final Determination*, which calls into serious question the integrity of Commerce's CVD investigation. In addition, given the seriousness and materiality of such misconduct, the grave consequences it has caused, and Commerce's minimal interest in finality, the Court should order a remand to Commerce with instructions to reopen the record and accept Xiamen Dalle's December 2024 Q&V shipment data for recalculation of the agency's critical circumstances determination.[5]

---

[5]   This Court "possess{es} all the powers in law and equity of . . . a district court of the United States," *Rhone Poulenc, Inc. v. United States*, 880 F.2d 401, 402 (Fed. Cir. 1989) (citing 28 U.S.C. § 1585), and may fashion appropriate relief. *Id.* at 402 (A "distinction exists between a court's subject matter jurisdiction and its inherent powers, i.e., those incidental powers necessary and proper to an exercise of that jurisdiction.").

## V.       CONCLUSION AND RELIEF SOUGHT

For the foregoing reasons, Plaintiff respectfully requests that this Court hold that

Commerce's *Final Determination* is not supported by substantial evidence and is otherwise not

in accordance with law, remand the *Final Determination* to Commerce for reconsideration

consistent with the opinion of this Court, and order such other relief that the Court deems just

and proper.


                                        Respectfully submitted,


                                        /s/ Jing Zhang
                                        Jing Zhang
                                        Ryan R. Migeed
                                        MAYER BROWN LLP
                                        1999 K Street NW
                                        Washington, DC 20006
                                        (202) 263-3235
                                        *Counsel to Xiamen Dalle New Energy Automobile*
                                        *Co., Ltd.*

Dated: March 30, 2026


35

## <u>CERTIFICATE OF COMPLIANCE WITH CHAMBERS PROCEDURES 2(B)(1)</u>

The undersigned hereby certifies that this brief contains 10,733 words, exclusive of the

corporate disclosure statement, table of contents, table of authorities, glossary of case-specific

acronyms and abbreviations, and certificates of counsel, and therefore complies with the

maximum 14,000 word count limitation as set forth in the Standard Chambers Procedures of the

U.S. Court of International Trade.

<div align="right">

/s/ Jing Zhang
Jing Zhang
Ryan R. Migeed
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3235
*Counsel to Xiamen Dalle New Energy Automobile
Co., Ltd.*

</div>

Dated: March 30, 2026